**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **REGINALD WARREN,** | ) | **CASE NO. 1:09CV1064** |
| | ) | |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **KEITH SMITH, Warden** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Reginald Warren ("Warren"), through counsel, challenges the constitutionality of his conviction and sentence in the case of *State v. Warren*, Cuyahoga County Court of Common Pleas Case No. CR-458468.  Warren filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on May 8, 2009.  On September 24, 2009, Warden Keith Smith ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 7.)  Warren filed a Traverse on December 24, 2009.  (Doc. No. 10.)  Supplemental briefs were also filed by the parties.[1]  (Doc. Nos. 12, 14.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Warren's Petition be denied.

## I.  Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Warren's conviction as follows:

---

[1]The Court ordered Respondent to address the issue of procedural default on grounds one, two, three, five and six and to address ground five on the merits.  (Doc. No. 11.)

{¶ 2} On November 12, 2004, appellant was charged in a 48-count indictment concerning events that occurred from June to August 1988, when he was 15 years old. Counts 1 through 12 charged him with rape of a child under the age of thirteen. Counts 13 through 24 alleged that he had committed felonious sexual penetration. Counts 25 through 36 charged appellant with gross sexual imposition. Counts 37 through 48 charged appellant with kidnapping. Each of the 48 charges carried a violence specification.

{¶ 3} Appellant moved the court to dismiss the charges against him because of excessive preindictment delay. The court orally overruled this motion prior to trial, as well as appellant's oral motion to dismiss for lack of jurisdiction because of his age at the time the offenses occurred.

{¶ 4} Appellant waived his right to a jury trial and the matter then proceeded to trial before the court. At trial, the court heard the testimony of Cleveland Police Detective Daniel Ross; the victim, Tiffany Logan Youngblood; the victim's mother, Edith Logan Gaffney; the victim's sister, Alisa Marie Logan; the victim's former husband, Louis Williams; and Cleveland Police Officer James McPike.

{¶ 5} The victim testified that during the summer when she was nine years old, she and her younger sister stayed at the home of James Thomas while their mother was at work. Thomas lived with his cousin, a Mr. Murphy, two or three houses away from their home. Another girl, Thomas's granddaughter, was also at Thomas's house every day, and the girls played together. Thomas was crippled and would sit in a chair at the base of the stairs in the front room of the house.

{¶ 6} Appellant came to Thomas's house to help with yard work and housework. The first time anything happened, appellant entered an upstairs bedroom where the victim was playing with dolls. He started kissing her and "playing" with her breasts. The next time, appellant had her lie down on the dining room floor. He held her hands over her head, then pulled down her shorts and inserted his finger approximately 1 ½ inches into her vagina. He did this on 11 or 12 occasions. He would tell her to be quiet or he would hurt her and her mother and sister and Mr. Thomas.

{¶ 7} On another eight or nine occasions, the victim testified that appellant rubbed his penis against her vagina and attempted to insert it. On another occasion, he tried to force her to perform fellatio on him. He tried to insert a brush handle into her vagina on another occasion, but Mr. Murphy called him away before he could do so.

{¶ 8} The victim said these events occurred every other day for a period of approximately two months, and appellant threatened her every time. At her mother's prompting, the victim told her mother that appellant was "messing" with her. Her mother then spoke with Mr. Thomas, and the victim did not see appellant again.

{¶ 9} At the conclusion of the state's case, appellant moved the court for a judgment of acquittal pursuant to Crim.R. 29. The court granted this motion as to four of the rape charges and all 12 of the charges of felonious sexual penetration. The court further dismissed the violence specifications with respect to eight of the charges of gross sexual imposition. Appellant presented no evidence at trial. The court found appellant guilty of each of the remaining charges and specifications. It subsequently sentenced appellant to life imprisonment on each of the eight rape charges, to be served concurrently with one another but consecutively to the other

2

sentences; four to ten years' imprisonment on each of the four
gross-sexual-imposition charges with violence specifications, to be served
concurrently with one another but consecutively to the other sentences; two years'
imprisonment as to three of the gross-sexual-imposition charges to be served
concurrently with one another but consecutively to the other sentences; two years'
imprisonment as to the remaining five gross-sexual-imposition charges, to be
served concurrently with one another but consecutively to the other sentences;
and 15 to 25 years' imprisonment on the kidnapping charges with violence
specifications, to be served concurrently with the other sentences.

*State v. Warren,* 168 Ohio App.3d 288, 293-294, 859 N.E.2d 998, 1001 - 1002 (Ohio App. 8
Dist., 2006).

## II.  Procedural History

### A. Conviction

On November 9, 2004, the Cuyahoga County Grand Jury indicted Warren on 48 counts
as follows: 12 counts of Rape of a child under age thirteen with force specifications (Ohio Rev.
Code ("O.R.C.") § 2907.02); 12 counts of Felonious Sexual Penetration with force specification
("O.R.C. § 2907.12); 12 counts of Gross Sexual Imposition (O.R.C. § 2907.05); and 12 counts of
Kidnapping (O.R.C. § 2905.01).  (Doc. No. 7-1, Resp. Exh. 1.)  All counts covered a period of
time from June 1988 through August 1988.  *Id.*  Warren filed a motion to dismiss the indictment
alleging that his right to a speedy trial was violated by the sixteen year delay in prosecution,
which the court denied from the bench.  (Doc. No. 7-1, Resp. Exh. 2; Tr. P. 11.)

Upon Warren waiving his right to a jury, the case proceeded to a bench trial.  (Doc. No.
7-1, Exhs. 4, 5.)  At the close of the State's case, the court granted Warren's Rule 29 motion as
to four counts of rape, all counts of felonious sexual penetration, and the violence specifications
on eight of the gross sexual imposition counts.  (Doc. No. 7-1, Resp. Exh. 6.; Tr. at 260-265,
269-271.)  On June 9, 2005, Warren was found guilty of eight counts of Rape with force
specifications, twelve counts of Gross Sexual Imposition, with violence specifications attached
to four of the counts, and twelve counts of Kidnapping with specifications.  (Doc. No. 7-1, Resp.
Exh. 6.)  The remaining counts and specifications were nolled.  *Id.*  On July 8, 2005, Warren was
sentenced as follows:

Counts 1-8, Rape with specification - life sentence on each count, to run
concurrent to each other, but consecutive to Counts 25-36;

Counts 25-28, Gross Sexual Imposition with violence specification, 4 to10

3

years on each count, to run concurrent to each other, but consecutive to Counts
29-36;

Counts 29-31, Gross Sexual Imposition, 2 years on each count, to run
concurrent to each other;

Counts 32-36, Gross Sexual Imposition, 2 years on each count, to run
concurrent to each other but consecutive to Counts 29-31;

Counts 37-48, Kidnapping, 15 to 25 years on each count, to run concurrent
to each other and concurrent to Counts 1-8 and 25-36.

(Doc. No. 7-1, Resp. Exh. 7.)  The trial court also found him to be a sexual predator.  (Doc. No.
7-1, Resp. Exh. 8.)

## B.  Direct Appeal

Warren, through new counsel, filed a timely Notice of Appeal with the Court of Appeals
for the Eighth Appellate District ("state appellate court") raising the following assignments of
error:

1.  Appellant's right to due process of law was violated by the pre-
    indictment delay of sixteen years, during which two vital witnesses
    died and the alleged scene was destroyed.

2.  The twenty-year statute of limitations provided in R.C. 2901.13 is
    unconstitutional as a matter of law because it fails to protect
    individuals from having to defend themselves against overly stale
    charges from the distant past; because appellant was unjustly
    prosecuted under this unconstitutional statute, his conviction must
    be vacated.

3.  Appellant's indictment and conviction of repetitive and unspecific
    offenses violated his due process rights to notice of the crime
    charged and protection from double jeopardy, and requires the
    dismissal of duplicative counts.

4.  The defendant was denied his constitutional right to due process
    and a fair trial when the court erred in allowing and considering
    hearsay and other inadmissible and unfairly prejudicial testimony.

5.  The trial court erred in failing to merge the sentences for
    kidnapping and the other offenses, which were committed with a
    single animus.

6.  The trial court erred and abused its discretion when it based
    appellant's sentence on uncharged and unrelated conduct that was
    not shown to have been actually committed by appellant beyond a
    reasonable doubt, as well as conduct committed by others, thereby
    violating appellant's right to due process of law and a fair
    sentencing hearing under the Fifth, Sixth and Fourteenth
    Amendments.

4

7.  R.C. 2907.02 and R.C. 2151.02(C)(3) were unconstitutionally applied to appellant, who was a minor at the time of the alleged crime; thus appellant's right to due process and a fair trial was denied when he was sentenced as an adult for crimes alleged to have been committed when he was only fifteen years old.

8.  The sentence imposed by the trial court was an abuse of discretion and an error in violation of R.C. 2929.41.

(Doc. No. 7-1, Resp. Exhs. 9, 10.)  On August 21, 2006, the state appellate court affirmed Warren's convictions and sentences for one count of Rape, four counts of Gross Sexual Imposition with violence specifications, and five counts of Kidnapping with violence specifications, but reversed the remaining convictions and sentences.  (Doc. No. 7-1, Resp. Exh. 12; Tr. 270.)  He did not pursue a direct appeal to the Ohio Supreme Court.

### C.  Resentencing

Following the state appellate court's decision, Warren was resentenced to a term of life imprisonment for Count 1, consecutive to Counts 25-28; Counts 25-28, 4 to 10 years imprisonment on each count to run concurrent to each other; Counts 37-41, 15 to 25 years imprisonment on each count to run concurrent to each other and concurrent to Counts 1 and 25-28.  (Doc. No. 7-1, Resp. Exh. 17.)  The resentencing entry was journalized on October 12, 2006. *Id.*

### D.  Delayed Appeal to the Ohio Supreme Court

On November 20, 2006, Warren filed a Notice of Appeal and a motion for delayed appeal in the Ohio Supreme Court.  (Doc. No. 7-2, Exhs. 18, 19.)  After the court allowed the motion for delayed appeal, Warren filed his jurisdiction memorandum asserting five propositions of law:

I.  Appellant's right to due process of law was violated by a pre-indictment delay of sixteen years, during which two vital witnesses died and the alleged scene was destroyed.

II.  The twenty-year statute of limitations provided in R.C. 2901.13 is unconstitutional as a matter of law because it fails to protect individuals from having to defend themselves against overly stale charges from the distant past; because appellant was unjustly prosecuted under this unconstitutional statute, his conviction must be vacated.

III.  Mr. Warren was denied his constitutional right to due process and a fair trial when the court erred in allowing and considering hearsay and other prejudicial and inadmissible testimony which

5

> improperly bolstered Ms. Youngblood's credibility in violation of his rights under the Sixth Amendment.
>
> IV.   The trial court erred in failing to merge the sentences for kidnapping and the other offenses, which were committed with a single animus.
>
> V.    R.C. 2907.02 and R.C. 2151.02(C)(3) were unconstitutionally applied to appellant, who was a minor at the time of the alleged crime; thus appellant's right to due process and a fair trial was denied when he was sentenced as an adult for crimes alleged to have been committed when he was only fifteen years old.

(Doc. No. 7-2, Exh. 20, Tr. 30.)  The Court accepted Warren's memoranda only as to Proposition of Law No. 5.  (Doc. No. 7-2, Exh. 22, Tr. 69.)  On May 6, 2008, after briefs were filed, the Court ruled that the principles of due process were not violated and affirmed the state appellate court.  (Doc. No. 7-2, Exh. 26, Tr. 148; Exh. 27, Tr. 170.)

### E.  26(B) Application for Reopening

Meanwhile, on November 8, 2006, Warren filed an application to reopen pursuant to Ohio App. Rule 26(B) alleging his appellate counsel was ineffective because he failed to raise the following issues on appeal:

> 1.   The due process clause forbids retroactive expansion of a limitations period to permit a prosecution that the passage of time had previously barred.
>
> 2.   The trial court erred by allowing the prosecutor to introduce and rely on improper victim impact evidence during the adjudicatory phase of the trial.

(Doc. No. 7-2, Exh. 28, Tr. 171.)   On January 10, 2007, the state appellate court, in a written opinion, denied the application to reopen.  (Doc. No. 7-2, Exh. 29, Tr. 184.)

Warren filed a timely Notice of Appeal and Memorandum in Support of Jurisdiction to the Ohio Supreme Court setting forth the same two propositions of law.  (Doc. No. 7-2, Exhs. 30, 31, Tr. 193, 195.)  On May 16, 2007, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 7-2, Exh. 32, Tr. 217.)

### F.  Federal Habeas Petition

Warren, through counsel, filed the instant Petition for a Writ of Habeas Corpus asserting the following grounds for relief:

**Ground One**: The Petitioner was denied his constitutional rights to due process and a fair trial by a pre-indictment delay of sixteen years, during which two vital witnesses died and the alleged crime scene was destroyed.

**Ground Two**: Petitioner's right to due process and a fair trial were violated by O.R.C. § 2901.13, as amended in 1999 to create a twenty-year statute of limitations, which permits the prosecution of stale misconduct allegations.

**Ground Three**: The Defendant was denied his constitutional rights to due process and a fair trial where the court admitted and considered hearsay and other improper evidence in deciding this case.

**Ground Four**: Petitioner's rights under the Double Jeopardy Clause were violated when he was subjected to multiple punishments for a single act of misconduct.

**Ground Five**: Due process, fundamental fairness and the prohibition against ex post facto laws were violated when Petitioner, as an adult, received a life sentence for rape of a child under 13, where he was only a 15 year old juvenile when the offense allegedly occurred.

**Ground Six**: Petitioner's right to due process under the Fifth and Fourteenth Amendments and the prohibition against ex post facto laws were violated by the retroactive expansion of the statute of limitations, which permitted a prosecution that the passage of time had previously barred.

**Ground Seven**: Trial court violated Petitioner's rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments of the Constitution by admitting and considering irrelevant prejudicial evidence.

(Doc. No. 1.)  In the Traverse, Warren withdrew grounds four and seven.  (Doc. No. 10 at 9.)  Respondent contends that ground six is procedurally defaulted.

### III.  Exhaustion and Procedural Default

#### A.  Exhaustion

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  Exhaustion does not require a state court adjudication on the merits of the claim at issue.  *See Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004); *Smith v. Digmon*, 434 U.S. 332, 333, 98 S.Ct. 597 (1978) ("It is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely

7

raised in petitioner's brief in the state court. . . ."); *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990) ("The fact that the state court does not address the merits of the claim[s] does not preclude a finding of exhaustion.").

However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B. Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies

8

are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

A petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

9

The Respondent has raised a procedural default defense only as to Ground Six, regarding the retroactive expansion of the statute of limitations.  Petitioner raised this claim for the first time in his 26(B) Application to Reopen asserting that his appellate counsel was ineffective for failing to present it on direct appeal.  (Doc. No. 7-2, Exh. 28.)  In a written opinion, the state appellate court denied the application on the merits.  (Doc. No. 7-2, Exhs. 28, 29.)  Warren then filed a Notice of Appeal and Memorandum with the Ohio Supreme Court.  (Doc. No. 7-2, Exhs. 30, 31.)  The appeal was dismissed as not involving any substantial constitutional question. (Doc. No. 7-2, Exh. 32.)

Respondent argues that ground six is procedurally defaulted as only the ineffective assistance of appellate counsel claim was properly presented in the state courts.  A Rule 26(B) Application, by its very nature, is a claim of ineffective assistance of appellate counsel.  *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  "Bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Davie v. Mitchell*, 547 F.3d at 312; *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Roberts v. Carter*, 337 F.3d 609, 615 (6th Cir. 2003) (noting that, "[i]n light of the requirements of Rule 26(B), the court's holding must be read as pertaining to the merits of the ineffective assistance claim, not the underlying state procedural rule claim).  As ground six does not advance an ineffective assistance of appellate counsel claim, it is procedurally defaulted, unless cause and prejudice or actual innocence can be demonstrated.

Warren concedes that ground six was not raised on direct appeal, but was included in the context of his Rule 26(B) motion to reopen with the state appellate court.  *See Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002).  He argues that the ineffective assistance of appellate counsel is sufficient cause to excuse the default, however, he does not state any specific reasons that counsel was ineffective.  Warren has had the same counsel from direct appeal to the present habeas petition.  Moreover, the state appellate court, applying appropriate U.S. Supreme Court rulings, concluded that appellate counsel was not deficient:

{¶ 6} In the present case, Warren's arguments on ineffective assistance of

10

appellate counsel are not well taken. His first argument is that the expansion of the statute of limitations from six years to twenty years in 1999 violated the Due Process and *Ex Post Facto* Clauses of the United States Constitution because the expansion permitted a prosecution that the passage of time had previously barred. The underlying events occurred in 1988, when Warren was fifteen years old and the victim was nine years old. Thus, Warren argues that the trial judge improperly denied his pretrial motion to dismiss on statute of limitations grounds after sixteen years and that his appellate counsel should have argued that the statute and the judge's decision directly violated the *Ex Post Facto* and Due Process Clauses. This argument postulates that the limitations period must have expired in 1994.

{¶ 7} However, Warren's appellate counsel contested the delay in prosecution through two assignments of error: (1) The sixteen-year delay in prosecution violated Warren's due process rights by prejudicing his defense because during that time the scene of the crime was destroyed and two key witnesses died. (2) The twenty-year statute of limitations is unconstitutional because it fails to protect individuals from having to defend themselves against overly stale charges. Following the admonitions of the United States Supreme Court and the Supreme Court of Ohio, this court will not second-guess the reasonable professional judgment of Warren's appellate attorney to attack the limitations issue in terms of prejudice and the inherent unfairness of a twenty-year criminal statute of limitations, instead of arguing that the limitations period had already run.

{¶ 8} Furthermore, Warren cannot establish prejudice. In its opinion, this court specifically examined the issue Warren now raises and concluded that the statute of limitations had not run. R .C. 2901.13 had provided a six-year statute of limitations. However, the amended version provided that the new limitations period "applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act." This court then stated that the statute of limitations was tolled because the victim was a minor. Thus, the six-year period did not begin to run until 1997, when the victim was eighteen years old. Consequently, the 1999 amendments were applicable to Warren because they became effective during the limitations period. This court further noted that the courts of Ohio had held the extension of an unexpired statute of limitations is not an invalid *ex post facto* law. Indeed, this court relied upon *State v. Diaz*, Cuyahoga App. No. 81857, 2004-Ohio-3954 and *State v. Bentley*, Ashtabula App. No.2005-A-0026, 2006-Ohio-2503, in which the courts of appeals on very similar facts held that the 1999 amendment to R.C. 2913.01 was constitutional and permitted prosecution.

Furthermore, *Stogner v. California* (2003), 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544, upon which Warren relies, noted that courts have upheld extensions of unexpired statutes of limitations as in the present case. Therefore, this court can understand why appellate counsel, in the exercise of professional judgment, would not argue that the statute of limitations had run but would nuance the argument so as to be distinguishable from *Diaz* and *Bentley*.

*State v. Warren*, 2007 WL 64701, *2-3, Case No. 86854 (Ohio App. 8th Dist. Jan. 10, 2007).

The state appellate court, relying on United States Supreme Court precedent, concluded that

Warren did not demonstrate his appellate counsel was deficient, nor was Warren able to establish

prejudice.  As there is no ineffective assistance of appellate counsel, Warren has not satisfied the

11

cause requirement to overcome his default.  Given that cause has not been satisfied, it is unnecessary to determine whether or not Warren suffered any actual prejudice.  Finally, no manifest injustice argument has been advanced.  Ground six is, therefore, procedurally defaulted. Furthermore, had ground six been reviewed on its merits, this Court would find the state appellate court's ruling that no *ex post facto* violation occurred was neither contrary to nor an unreasonable application of clearly established federal law.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the

12

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

## V.  Analysis

### A.  Ground One

Warren maintains that he was denied his due process and fair trial rights by a pre-indictment delay of sixteen years.  (Doc. No. 1 at 24.)  He asserts that the delay prevented him from presenting evidence helpful to his defense in that, by the time he was indicted, two key witnesses had died and the house where the alleged incidents took place had been demolished. *Id.*  He asserts that he was severely prejudiced by the fact that an indictment alleging offenses in 1988 was not returned until 2004.  Respondent argues that the state appellate court, in finding no due process violation, correctly and reasonably applied clearly established precedent to the facts of the case.  (Doc. No. 7 at 15.)

The state appellate court concluded that the delay was not a violation of Warren's due process rights:

> {¶ 10} Appellant first contends that his due process rights were violated by the 16-year delay between the criminal acts and the indictment against him. The United States Supreme Court has acknowledged that "the Due Process Clause has a limited role to play in protecting against oppressive [preindictment] delay." *United States v. Lovasco* (1977), 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752. "[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim * * *. [T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 790, 97 S.Ct. 2044, 52 L.Ed.2d 752.

> {¶ 11} In *Lovasco*, the court held that due process is not violated by an investigative delay in prosecution, even if the defendant is somewhat prejudiced by this delay. The court distinguished investigative delay from delay undertaken

13

for the purpose of gaining a tactical advantage, noting that an investigative delay is "not so one sided.  Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed.' " *Id., quoting Smith v. United States* (1959), 360 U.S. 1, 10, 79 S.Ct. 991, 3 L.Ed.2d 1041.

{¶ 12} In this case, the delay was not caused by government action or inaction. *See, e.g., United States v. Cruikshank* (1876), 92 U.S. 542, 554, 23 L.Ed. 588 ("The fourteenth amendment prohibits a State from depriving any person of life, liberty, or property, without due process of law; but this adds nothing to the rights of one citizen as against another. It simply furnishes an additional guaranty against any encroachment by the States upon the fundamental rights which belong to every citizen as a member of society"). The victim did not report the crime to the police until April 2004. Her delay in reporting the crime cannot be ascribed to the state for purposes of finding a violation of appellant's due process rights. Therefore, we overrule the first assignment of error.

*Warren,* 168 Ohio App.3d at 294-296, 859 N.E.2d at1002-1004.

Although statutes of limitations provide the "primary guarantee" against prosecutorial delay, the Supreme Court has explained that "the Due Process Clause has a limited role to play in protecting against oppressive delay."[2]  *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977).  The seminal cases analyzing pre-indictment delay in the Due Process context are *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) and *Lovasco*, 431 U.S. 783.  In this circuit, dismissal for pre-indictment delay "is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage."  *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984)(*quoting United States v. Brown*, 667 F.2d 566 (6th Cir. 1982) (*per curiam*)).

Warren contends that *Marion* and *Lovasco* require a "case-by-case" inquiry as to whether an unconstitutional pre-indictment delay occurred.  *See United States v. Sowa*, 34 F.3d 447, 450-52 (7th Cir. 1994); *Howell v. Barker*, 904 F.2d 889 895 (4th Cir. 1990); *United States v. Ross*, 123 F.3d 1181, 1184-85 (9th Cir. 1997).  Warren, however, focuses solely on the prejudice prong.

_____

[2]"No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. Amend. V.

14

Respondent argues that the state court correctly determined there to be no delay in bringing the indictment attributable to the state, as the victim did not report the charges to the police until 2004.

The Supreme Court has emphasized that, in order to establish a due process violation, the defendant must show that the delay "caused him *actual* prejudice in presenting his defense." *United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009) (*quoting United States v. Gouveia*, 467 U.S. 180, 192 (1984)) (emphasis added); *see also Lovasco*, 431 U.S. at 789 ("[P]roof of actual prejudice makes a due process claim concrete and ripe for adjudication, not . . . automatically valid."); *Marion*, 404 U.S. at 326 ("Events of trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.") Courts have concluded that a death of a witness has prejudiced a defendant where the courts are "'convinced that [the witness] would have testified, that his testimony would have withstood cross-examination, and that the jury would have found [him] a credible witness.' Further, even if we are convinced that an absent witness would have been a credible witness for the defendant, 'we must still evaluate this testimony against the other trial evidence to determine if indeed its introduction would affect the trial outcome.'" *United States v. Valona*, 834 F.2d 1334, 1339 (7th Cir. 1987) (*quoting United States v. Williams*, 738 F.2d 172, 176 (7th Cir. 1984)).

Warren argues that he was prejudiced because witnesses were no longer available and that the house where the alleged incidents took place had been demolished. He speculates that the witnesses "would have corroborated or (more likely) rebutted the vague testimony the complaining witness provided." (Doc. No. 10 at 14.) Furthermore, Warren alleges that if the house was still standing, he may have been able to show that it was too small for the acts to have taken place undetected. *Id*.

The most common stumbling block for a defendant has been the requirement that in order to show actual prejudice he must show how he was prejudiced; the defendant's showing must be concrete, not speculative. In *United States v. Solomon*, 688 F.2d 1171, 1179 (7th Cir. 1982), where the defendant made only general allegations of prejudice, the fact that two potential witnesses died during the pre-indictment delay was not actual prejudice. Nor was it enough

15

when a defendant claimed that the delay made it impossible to credibly reconstruct events. *See United States v. Watkins*, 709 F.2d 475 (7th Cir. 1983). A defendant must do more than allege that a particular witness is no longer available and that the witness's testimony would have helped the defense. *See United States v. Brown*, 742 F.2d 359, 362 (7th Cir. 1984). "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice." *Id*. (*quoting United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir.1983));*see also United States v. Jones*, 808 F.2d 561, 567 (7th Cir. 1986) ("Mr. Jones fails to specify exactly what Mr. Wilkins' testimony would have been, why he was unavailable, or in what sense the others' memories had faded.")

In the instant case, the Court cannot speculate whether Warren's potential witnesses would in fact have testified, whether their testimony would have withstood cross-examination, or whether the jury would have found them credible. Under these circumstances, he has failed to establish prejudice.

More conclusively, however, the burden is on the defendant to show "that the delay between the alleged incident and the indictment was an intentional device on the part of the Government to gain a decided tactical advantage in its prosecution." *Schaffer*, 586 F.3d at 425. Because of the delay in reporting the crime, Warren could not meet his burden.

Here, the state appellate court concluded that Warren's due process rights were not violated because the delay was not caused by government action or inaction, but was due to the victim not reporting the crime to the police until 2004. He was indicted that same year, on November 12. The court reasonably applied Supreme Court precedent to Warren's circumstances.

### B.  Ground Two - Statute of Limitations in O.R.C. § 2901.13 is Unconstitutional

Warren also argues that O.R.C. § 2901.13, as amended in 1999, is unconstitutional and constitutes a deprivation of his Due Process Rights under the Fifth and Fourteenth Amendments. Respondent argues that ground two involves the application of state law and does not rise to a federal constitutional level. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Watters v. Hubbard*, 725 F.2d 381, 383 (6th Cir. 1984). Respondent contends that even if the alleged error

16

resulted in a denial of fundamental fairness, he avers that the state appellate court correctly and reasonably applied clearly established precedent to the facts.

The state appellate court concluded that O.R.C. § 2901.13 is constitutional:

> {¶ 13} Second, appellant argues that the amendment of the statute of limitations effective March 9, 1999 violated his rights to due process. R.C. 2901.13 formerly provided for a six-year limitations period for all felonies except murder and aggravated murder. In 1999, the statute was amended to increase the limitations period to 20 years for certain crimes, including rape, gross sexual imposition, and kidnapping. 1997 Ohio H.B. No. 49. House Bill 49 provided that the amended statute of limitations "applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act."
>
> {¶ 14} Appellant's prosecution for these 1988 offenses was not barred before the effective date of House Bill 49, because the statute of limitations was tolled because of the victim's age. Pursuant to R.C. 2901.13(F), "[t]he period of limitation shall not run during any time when the corpus delicti remains undiscovered." When the victim of a sex offense is a child, the corpus delicti generally is deemed to be discovered when the child reaches the age of majority. *See State v. Elsass* (1995), 105 Ohio App.3d 277, 280, 663 N.E.2d 1019, and cases cited therein. However, when the child tells a "responsible person" who is required by law to report the events to a peace officer or children's services agency pursuant to R.C. 2151.421(A)(1), the statute of limitations begins to run as of that time, even if the child has not attained the age of majority. *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711. In this case, there is no evidence that the victim reported these crimes to a "responsible person" before she attained the age of 18 in 1997. Thus, the statute of limitations did not begin to run until then and had not expired as of March 9, 1999, when the statute was amended.
>
> {¶ 15} We have recently held that the extension of an unexpired statute of limitations is not an invalid ex post facto law. *State v. Diaz*, Cuyahoga App. No. 81857, 2004-Ohio-3954, 2004 WL 1688437, at ¶ 12; *see, also, State v. Bentley*, Ashtabula App. No. 2005-A-0026, 2006-Ohio-2503, 2006 WL 1381521. Apparently, however, appellant is arguing that a 20-year statute of limitations is unreasonable and therefore unconstitutional. He has cited no support for this proposition, and we find none.  Therefore, we overrule the second assignment of error.

*Warren,* 168 Ohio App.3d at 294-296, 859 N.E.2d at 1002-1004.

Warren concedes that the 1999 extension of the statute of limitations from six to twenty years rendered the 2004 indictment permissible, but argues that the limitations period effective at the time of the alleged offenses in 1988, even after applying the tolling due to the victim's former minority status, would have barred prosecution after 2003.  (Doc. No. 10 at 18.) Respondent contends that when the statute of limitations was extended in 1999, the statutory bar on prosecuting the case would not expire until 2017.  (Doc No. 7 at 18.)

17

The statute of limitations timeline in this case is summarized as follows: Warren was convicted of raping and molesting the complainant when she was nine years old in 1988.  The statute of limitations at the time was six years, or until the "*corpus delicti*" is discovered.  O.R.C. § 2901.13(F) (1988) (effective 1/1/1974).  Here, the *corpus delicti* was not "discovered" until the victim reached the age of eighteen in 1997.  Therefore, the original statute of limitations of six years did not commence until 1997 and was still running when it was extended to twenty years in 1999.[3]  With this extension, the statutory bar on prosecuting Warren's case would not expire until 2017.[4]

Warren relies upon *Stogner v. California*, 539 U.S. 607 (2003), which concerned a statute of limitations that permitted prosecution for sex-related child abuse where the prior limitations period had expired, if the prosecution was begun within one year of the abuse being reported to police.  The Supreme Court concluded that "[a] law enacted after expiration of a previously applicable limitations period violate[d] the *Ex Post Facto* Clause when it [was] applied to revive a previously time-barred prosecution."  *Stogner* at 632, 633.  But *Stogner* does not help Warren's argument that the Ohio statute is unconstitutional.  The *Stogner* Court distinguishes between the

---

[3]Effective March 9, 1999, the Ohio Legislature changed the statute of limitations for felonies including rape, gross sexual imposition, sexual battery and other sex crimes from six years to twenty years after the offense is committed.

*Page's* Ohio Revised Code Annotated indicates the following legislative history for this statute:

> SECTION 3. Section 2901.13 of the Revised Code, as amended by this act, applies to an offense committed on and after the effective date of this act and applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act.

> The legislature intended, therefore, that the lengthened statute of limitations apply to crimes committed prior to the amendment so long as the statute of limitations had not expired at the time the amendment took effect.

[4]The previous limitations period would have expired in 2003, six years after 1997 when the victim turned eighteen years of age.

application of an extended period of limitations to an already expired statute and the situation where the extension occurred prior to expiration.  In fact, the *Stogner* Court cited precedent from this district indicating that an accused cannot "complain if the statute of limitations [was] extended so long as the period of time originally provided there had not run at the time of such extension."  *See Stogner* at 618 *citing United States v. Haug*, 21 F.R.D. 22, 25 (N.D. Ohio 1957).

Here, the state appellate court's conclusion that the new statute was reasonably enforced and that there was no *ex post facto* violation was neither an objectively unreasonable application of clearly established Federal law, nor was it based on an unreasonable determination of facts in light of the evidence.  Furthermore, neither the state appellate court nor this Court has found legal support for Warren's argument that the statute was unconstitutional simply due to the twenty year window.

**C.  Ground Three – Admission of Hearsay and Other Inadmissible Evidence at Trial**

Warren further contends that his right to a fair trial and due process were violated because the trial court admitted hearsay and other inadmissible and prejudicial evidence.  Specifically, at trial the victim made a statement suggesting that Warren committed a burglary and vandalized the house where the incidents took place.  Warren contends that the trial court used this "evidence" in its verdict and sentence.  He also argues that the trial court considered inadmissible testimony from the victim's ex-husband and a detective.  The ex-husband testified that the victim "went berserk" while engaging in sexual relations.  Warren argues that the state appellate court improperly concluded this testimony was relevant in corroborating the victim's account of Warren's *modus operandi*.  Warren also argues that the state appellate court was wrong in concluding that the trial court did not consider the police detective's testimony regarding Warren's truthfulness in pretrial statements.  Warren argues that because the victim's allegations were vague and inconsistent and that there was no other evidence of guilt, the trial court must have used the inadmissible evidence to bolster the victim's claims, rendering his trial fundamentally unfair.

Respondent first argues that because this ground addresses evidentiary rulings by the trial

19

court, it is generally not cognizable in habeas corpus unless the evidentiary rulings are of such an egregious nature that it amounts to a denial of fundamental fairness.  *See Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983) *cert. denied*, 464 U.S. 962 (1983).  Respondent also argues that the state appellate court addressed each of the evidentiary claims and determined that they were without merit.  (Doc. No. 7 at 22.)

The state appellate court concluded that because the trial was presented to the bench, the court is presumed to have "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *Warren*, 2006 Ohio 4104 at ¶ 21 (*quoting State v. Richey*, 64 Ohio St.3d 353, 595 N.E.2d 915 (1992)) (*abrogated on other grounds*).  It reasoned as follows:

> First, appellant complains that the victim's testimony suggested that appellant had vandalized Mr. Thomas's house. Neither the victim nor the court suggested that the vandalism was committed by appellant; the court mentioned the vandalism in rendering its verdicts only to show why the victim perceived that her safety was still in danger if she told anyone about what had happened. This testimony has no relevance to the charges. There is no evidence that the court relied upon it to convict appellant.
>
> {¶ 22} Appellant also argues that the victim's former husband and the police detective who interviewed her improperly buttressed the victim's testimony. The victim's former husband testified that long before she went to the police, the victim "went berserk" when he pinned her hands down either at her side or over her head when they were having sexual intercourse. The court viewed this behavior as corroborating the victim's testimony about the details of appellant's *modus operandi*. Appellant did not object to the testimony of Detective McPike, and there is no indication that the court relied on his testimony in finding appellant guilty.[FN2]  Therefore, we overrule the fourth assignment of error.
>
> > FN2. In finding appellant guilty, the court did rely upon the testimony of Detective Ross, whom the court incorrectly identified as Detective McPike. Detective Ross testified that although the victim's sister did not allege that appellant committed any crime against her, in questioning appellant, he was careful to refer to both the victim and her sister. Appellant's responses referred only to "Tiffany," suggesting guilty knowledge.

*Warren*, 168 Ohio App.3d at 297-298, 859 N.E.2d at 1002-1004.

Alleged trial errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are typically not cognizable on habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "[Q]uestions concerning the admission of evidence that may be

unfairly prejudicial are committed to the sound discretion of the trial court." *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979); *see also Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citations omitted).  Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

Ground three raises state evidentiary issues.  The alleged errors do not rise to the level necessary to render the trial fundamentally unfair.  Moreover, the state appellate court reasonably applied the presumption that the trial court considered only relevant admissible evidence when reaching its verdict.  *See State v. Richey*, 64 Ohio St.3d at 357-358, 595 N.Ed.2d at 921. Warren has not established that the trial court relied on evidence that was either irrelevant or inadmissible thereby rendering the trial fundamentally unfair.

### D.  Ground Five – Due Process Violation when Sentenced as Adult for a Crime Alleged to have been Committed when Warren was a Minor

Warren argues that O.R.C. §§ 2152.02(C)(3) and 2907.02 were unconstitutionally applied to him resulting in an unfair sentencing hearing and a violation of his due process rights.[5]

---

[5]The Ohio statutes at issue are set forth, in pertinent part, as follows:

O.R.C. § 2152.02(C)(3) (Definitions) defines "child"

Any person who, while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age is not a child in relation to that act.

(Effective 1/1/2004).

O.R.C. § 2907.02 Rape; evidence; marriage or cohabitation not defenses to rape charges

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate

Warren first argues that the Ohio statutes prevented the court from considering his age at the time the offense was committed when imposing the sentence, thus circumventing a constitutional mandate.  (Doc. No. 10 at 34-35.)  Warren relies on *Thompson v. Oklahoma*, 487 U.S. 815 (1988) and *Roper v. Simmons*, 543 U.S. 551 (2005) to support his argument that his "youth" at the time of the offenses should have been a mitigating factor in sentencing.[6]  (Doc.

_____

and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

* * *

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

(B) Whoever violates this section is guilty of rape, a felony of the first degree. *** If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force or if the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.  If the offender under division (A)(1)(b) of this section previously has been convicted of or pleaded guilty to violating division (A)(1)(b) of this section or to violating a law of another state or the United States that is substantially similar to division (A)(1)(b) of this section or if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, whoever violates division (A)(1)(b) of this section shall be imprisoned for life or life without parole.

(Effective 6/13/2002)

[6]     [A]dolescents, particularly in the early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults.  Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms.  Moreover, youth crime as such is not exclusively the offender's fault; offenses by the young also represent a failure of family, school, and the social system, which share responsibility for the development of

22

No. 10 at 33.)

Respondent contends that there is no clearly established Supreme Court precedent to support Warren's claim as *Roper* and *Thompson* dealt with individuals facing the death penalty for offenses they committed as juveniles.  Warren, on the other hand, was sentenced as an adult to life imprisonment for a crime he committed as a juvenile.  (Doc. No. 12 at 10-12.)

The United States Supreme Court has held that the execution of individuals, who were children at the time of their offenses, is prohibited.  *Thompson*, 487 U.S. at 815, *Roper*, 543 U.S. at 551.  Circuit courts have held that *Thompson* and *Roper* apply "with only limited, if any, force outside of the context of capital punishment."  *United States v. Feemster*, 483 F.3d 583, 588 (8th Cir. 2007) (*vacated and remanded on other grounds*, 552 U.S. 1089, 128 S.Ct. 880 (2008)); *see also United States v. Mays*, 466 F.3d 335, 340 (5th Cir. 2006) ("There is not a national consensus that a sentencing enhancement to life imprisonment based, in part, upon a juvenile conviction contravenes modern standards of decency."); *United States v. Wilks*, 464 F.3d 1240, 1243 (11th Cir. 2006) ("It is one thing to prohibit capital punishment for those under the age of eighteen, but an entirely different thing to prohibit consideration of prior youthful offenses when sentencing criminals who continue their illegal activity into adulthood.")  As Warren is not facing the death penalty, neither *Roper* nor *Thompson* is applicable.

The Ohio Supreme Court has ruled in an analogous case.  *See State v. Walls*, 96 Ohio St.3d 437, 775 N.E.2d 829 (2002).  In *Walls*, the defendant was indicted in 1998 for an aggravated murder that occurred in 1985 when he was 15 years old.  Walls was tried as an adult, convicted, and sentenced to life imprisonment.[7]  The Ohio Supreme Court affirmed the

_____

America's youth.

*Thompson*, 487 U.S. at 834 (*quoting Eddings v. Oklahoma*, 455 U.S. 104, 115, n.11, 102 S.Ct. 869, 877, n.11 (1982)).

[7]The *Walls* case was reviewed in federal habeas on the issue of whether the retroactive application of the amended juvenile code violated the *Ex Post Facto* Clause, and the court held there was no violation as it was only speculative whether the measure of punishment increased. *See Walls v. Warden*, 2006 WL 293750, *7, Case No. 1:03cv569 (S.D. Ohio Feb. 7, 2006).

23

conviction.

In the instant case, the Ohio Supreme Court, relying on *Walls*, addressed Warren's due

process arguments as follows:

> {¶ 26} Warren now makes clear that the court of appeals misinterpreted his argument. His essential position is that in the specific circumstances of his case, the interplay of R.C. 2907.02 and 2152.02(C)(3) violates his due process rights and right to a fair trial under the United States and Ohio Constitutions. His challenge is based principally on Sections 10 and 16, Article I of the Ohio Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution, and, to a lesser extent, on other constitutional provisions. Warren specifically clarifies that he is not arguing that his life sentence violates the Eighth Amendment in light of *Roper v. Simmons*.

> {¶ 27} We therefore construe Warren's proposition of law as asserting that the mandatory life sentence for rape in his case violates basic due process principles of fundamental fairness. He urges us to hold that the challenged statutes cannot apply to him, to remand this cause to the trial court for resentencing on the rape count, and to direct that court to consider that Warren was a minor at the time of the offenses. In short, Warren asks us to instruct the trial court to disregard former R.C. 2907.02's clear requirement of a mandatory life sentence. This we cannot do.

> * * *

> {¶ 48} *Walls* is not directly on point with this case because it did not involve a due process argument based upon principles of fundamental fairness. However, the similarities between the situation in this case and in *Walls* are substantial, and the essential principles that emerge from *Walls* make it impossible for Warren to prevail on his due process argument.

> {¶ 49} Most important, as in *Walls*, the application of the statutes requiring that Warren be tried as an adult in common pleas court (in this case, R.C. 2152.02(C)(3), 2151.23(I), and 2152.12(J)) cannot be viewed as affecting a substantive right because under either the 1985 bindover law or the 1997 law that was applied to him, Warren was on notice that the offense[s] he allegedly committed could subject him to criminal prosecution as an adult in the general division of the court of common pleas. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 17.

> {¶ 50} In addition, *Walls* stands squarely in the way of any argument that Warren might make about the lack of a bindover hearing in his case, because although Warren "perhaps remained eligible for retention within the jurisdiction of the juvenile court under a technical reading of the old statutes, the practical reality is that [he] had virtually no chance of being kept in the juvenile system." *Walls*, at ¶ 31. As in *Walls*, any bindover hearing under the statute that was in place in 1988 would have been simply a procedural step in the process of transferring Warren for prosecution as an adult. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 41.

> {¶ 51} Warren does not explicitly argue that he was prejudiced by the absence of a bindover hearing or that the juvenile court should have retained jurisdiction over his case. Instead, he claims to have been prejudiced by the trial court's inability to consider his age at the time of the offenses in sentencing him for rape.

Warren argues that he would have received more favorable treatment if he had been charged with rape while still a juvenile and that favorable treatment should extend to the rape conviction in this case. Those arguments are significantly undercut by *Walls*, in which this court held that no substantive rights are affected in this situation. Id. at ¶ 19.

{¶ 52} In *State v. Schaar*, Stark App. No. 2003CA00129, 2004-Ohio-1631, 2004 WL 626815, the defendant argued that his conviction for gross sexual imposition violated constitutional guarantees of fundamental fairness because he committed the offense while he was a juvenile, but prosecution did not commence until he was 22 years old, and he was prosecuted as an adult. In rejecting that argument, the Fifth District, at ¶ 27, noted that this court in *Walls* "specifically held that changing the jurisdiction from the juvenile to the general division of the common pleas court did not involve any substantive right. Thus, appellant's substantive due process rights were not violated." The *Schaar* court properly interpreted the effect of *Walls* on a situation with some parallels to that of the present case.

*Warren,* 118 Ohio St.3d 200, 205, 210-211, 887 N.E.2d 1145, 1149, 1153-1154 (2008).

Warren contends the *Walls* is distinguishable as fingerprint technology had developed during the pre-indictment delay which was used to convict *Walls*. (Doc. No. 10 at 42.) In the instant case, Warren argues that there was no hard evidence upon which to base his conviction. In fact, due to the delay, potentially favorable witnesses were unavailable and evidence was destroyed. Nonetheless, the Ohio Supreme Court found that *Walls* and its holding made it impossible for Warren to prevail on his due process argument.

Warren also argues that his life sentence is disproportionate to sentences imposed on similarly-situated offenders. He contends that he if had been charged in a timely fashion, he may not have received a life sentence. (Doc. No. 10 at 37.) He relies on other Ohio cases in which defendants received blended sentences that amounted to a small fraction of the punishment he received. *See In re Smith*, 2006 WL 1519688 (Ohio App. 3rd Dist. Jun 5, 2006); *In re Wells*, 2005 WL 3526778 (Ohio App. 3rd Dist. Dec. 27, 2005); *In re Anderson*, 92 Ohio St.3d 63 (2001). In the cited cases, however, the defendants were under 18 at the time they were sentenced.

The Ohio Supreme Court addressed whether, as an adult, Warren was similarly-situated to juvenile offenders, and concluded he was not:

{¶ 57} Warren asserts the further secondary argument that his mandatory life sentence for rape is unfair because it is disproportionate to sentences imposed on "similarly situated offenders"-those juveniles who are charged with rape shortly after the offense is committed, while they are still juveniles, and who are not

bound over for trial. *Walls* is dispositive of this argument as well. Warren's vested rights were not impaired because under the juvenile statutes in effect when he committed his offenses, he was always subject to criminal prosecution as an adult. *Id.*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 17. Warren is not "similarly situated" to a juvenile who is charged with rape and not bound over for a trial; therefore, his sentence need not be proportionate to a sentence received by such an offender.

*Warren*, 118 Ohio St.3d at 211-212, 887 N.E.2d at 1155.

Warren next argues that O.R.C. § 2152.02(C)(3) is unconstitutional as it allows a complaining witness to delay a juvenile prosecution until the accused reaches adulthood. He argues that the severity of a sentence should be determined by the severity of the crime, the impact to the victim, and the offender's background, not on the length of time the victim lets pass before reporting the crime. (Doc. No. 10 at 39.)

The Ohio Supreme Court also addressed this argument as follows:

{¶ 53} Warren additionally argues that R.C. 2152.02(C)(3) violates due process in his situation because it allowed the victim "unfettered power" to delay prosecution until after his 21st birthday. Warren asserts that the victim made an "unjustified decision" to delay reporting this case to authorities and that in the meantime, his "sentencing exposure" arbitrarily increased even though the delay was not his fault. We find this argument unfounded for several reasons.

{¶ 54} First, the record contains no indications that the victim delayed this prosecution so that Warren could be charged as an adult instead of a juvenile and thereby face an increased penalty. To the contrary, the record establishes that the victim refrained from telling anyone about the incidents because Warren had threatened her and others with harm and that she later tried to put the incidents behind her and deal with them internally. It was only when she read the 2004 newspaper article that she developed the resolve to come forward.[8] In these circumstances, the victim's delay in reporting the molestation could hardly be termed "unjustified."

{¶ 55} Second, this argument is in substantial part based on underlying claims of prejudicial preindictment delay (*see Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 50-56) and on the improper tolling of the statute of limitations. Because we declined to review Warren's propositions of law on these issues, this argument is at least arguably beyond the scope of this appeal.

{¶ 56} Third, to the extent that this argument supports the proposition of law we agreed to review, it must fail under *Walls*. Warren's sentencing exposure did not arbitrarily increase, because the application of the relevant juvenile statutes to

---

[8]Earlier in the opinion, the Court stated that "[t]he victim testified that she did not report the molestation to the police until 2004, when she saw a newspaper article in the Cleveland Plain Dealer stating that Warren had been sentenced to a prison term for sexually assaulting a nine-year old girl." *Warren*, 118 Ohio St.3d at 201, 887 N.E.2d at 1147.

him "did not increase his available punishment in any manner other than a speculative and attenuated one." *Id.* at ¶ 41.

* * *

{¶ 58} For all the foregoing reasons, Warren does not demonstrate that his rights to due process and fundamental fairness were violated by the application of the challenged statutes to him as they are written to impose a mandatory life sentence for rape. Accordingly, we affirm the judgment of the court of appeals.

*Warren*, 118 Ohio St.3d at 211-212, 887 N.E.2d at 1154-1155.

Lastly, Warren contends that the Ohio Supreme Court's conclusion that he suffered no due process violation is unreasonable.  In response to Warren's argument that he would not have received life imprisonment if he had been tried for the crime in 1988, the Court noted that was speculative, as the statute in 1988 allowed for a life term had he been tried as an adult.  Warren maintains, however, that data collected from the Ohio's Department of Rehabilitation and Correction indicates that in 1988, 15-year olds released from the reformatory after a rape conviction had served an average of six years in custody, and by 1994, 15-year olds convicted of rape were serving an average of eight years.[9]  (Doc. No. 10 at 40.)

As there is no clearly established United States Supreme Court precedent regarding life sentences for crimes committed as a juvenile, but convicted and sentenced as an adult, the Ohio Supreme Court reasonably applied federal precedent and properly concluded that Warren's due process rights were not violated by the application of the Ohio statutes.

_____

[9]On March 22, 2010, Warren filed a request for leave to conduct additional discovery from the Ohio Department of Rehabilitation and Corrections for statistical information in support of his claim that fifteen year olds charged with similar offenses in this jurisdiction were not receiving or serving mandatory life sentences in 1988.  (Doc. No. 15.)  The Warden did not respond.  The Court recommends that this motion be denied as ground five is found to be meritless.

## VI.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Warren's Petition be

denied.

                                         _s/ Greg White_____
                                         United States Magistrate Judge

Date:   __April 29, 2010__

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**